AO 243
REV 6/82

# MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

(If movant has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion in the federal court which entered the judgment )

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

(1) This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury All questions must be answered concisely in the proper space on the form

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum

(3) Upon receipt, your motion will be filed if it is in proper order No fee is required with this motion.

(4) If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute form DC 12, setting forth information establishing your inability to pay the costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each such judgment.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

(7) When the motion is fully completed, the original and at least two copies must be mailed to the clerk of the United States District Court whose address is

(8) Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

09-CV-246B

AO 243
REV 6/82

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District of Wyoming | |
|---|---|---|
| Name of Movant: HARRY ALLAN STROUP | Prisoner No.: 09666-091 | Docket No.: 07-CR-158-01-B |
| Place of Confinement: Federal Correctional Institution/Englewood — Littleton, Colorado 80123 | | |

UNITED STATES OF AMERICA v. HARRY ALLAN STROUP (include name upon which convicted) (full name of movant)

MOTION

1. Name and location of court which entered the judgment of conviction under attack United States District Court of Wyoming 2120 Capital Avenue; Room #2131 — Cheyenne, Wyoming 82001

2. Date of judgment of conviction October 24, 2007

3. Length of sentence 57 months; 45 months of said term to run concurrently with sentence imposed in 06-CR-178-02-B and 12 months to run consecutively to same.

4. Nature of offense involved (all counts) 18 U.S.C. 1512 (b)(1) and (j) — Tampering With a Witness

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

NA

6. Kind of trial: (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
Yes ☑ No ☐

AO 243
REV 6/82

9. If you did appeal, answer the following:

(a) Name of court United States Court of Appeal for the Tenth Circu

(b) Result affirmed conviction and sentence

(c) Date of result Filed - July 30, 2008

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☑ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court United States District Court of Wyoming

(2) Nature of proceeding Motion to Extend time to file 2255 Motions.

(3) Grounds raised Legal papers were taken away while doing research and writing up of "2255 Motion" for a transfer from one institution to another and the transfer ended up lasting six and one half (6½) weeks.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result No action taken; motion not heard yet.

(6) Date of result NA

(b) As to any second petition, application or motion give the same information:

(1) Name of court United States District Court of Wyoming.

(2) Nature of proceeding Motion to Extend time to file 2255 Motions and request to Compel Attorney to furnish transcripts, etc.

(3) Grounds raised same as above, and (in) since repeated attempts to aquire transcripts and any other pertinent papers to this case have been ignored by my attorney. I am requesting items from the court or it to compel attorney to furnish them.

AO 243
REV 6/82

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result No action taken; motion not heard yet,

(6) Date of result N/A

(c) As to any third petition, application or motion, give the same information.

(1) Name of court United States District Court of Wyoming

(2) Nature of proceeding Motion asking for action to be taken on previous motions.

(3) Grounds raised as I had received no response to my previous motions I asked for a written response to this one at least,

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result Received a copy of Docketing of requests,

(6) Date of Result 8/17/2009

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1) First petition, etc. Yes ☐ No ☑

(2) Second petition, etc. Yes ☐ No ☑

(3) Third petition, etc. Yes ☐ No ☑

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

They are all still pending, and I am addressing them in this petition also.

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession

AO 243
REV 6/82

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Prosecutorial Misconduct

Supporting FACTS (tell your story *briefly* without citing cases or law: That the Prosecuting Attorney prejudicially worded the indictment, directly stating "I asked Mr. Sadler to lie, when I had in fact asked him to tell the truth. — also pages 127-130 E.H.T. + pages please see attached pages — page see # 1

B. Ground two: Ineffective Assistance of Councel violating my 14th Amendment Right of Due Process.

Supporting FACTS (tell your story *briefly* without citing cases or law): I believe that after all the testimony had been presented during the trial that I should have been put on the stand to give my version of events and reasons for even writing the letter. — see attached pages #2

C. Ground three:

Supporting FACTS (tell your story *briefly* without citing cases or law):

Attached pages - page #1

For Ground One - supporting facts

And then using his testimony to convict me when the government had a deal with Sadler to cooperate in the prosecution of any other individuals for the government, to receive time off of his sentence under the 5K1.1 agreement, a very strong motive for Mr. Sadler to lie, which he did alot of. So I think it is essentially a conspiracy between the prosecuting attorney and Mr. Sadler's attorney to prosecute me for his (Sadlers) benefit. Also the prosecuting attorney did this out of anger and spite as a retaliatory action because he tried to get my sentence enhanced for Obstruction of Justice on my first case #06-CR-178-02-B but the court ignored his request. I will also include copies of the pages of my trascripts of the Evidentiary Hearing pages #127-130. I will also include several pages from "Constitutional Limitations on Criminal Procedure" by Richard B. McNamara, from Chapter 9, entitled "The Prosecutor as Adversary."

# 9 The Prosecutor as Adversary

§9.01 Duties of the Prosecutor
§9.02 Duty to Protect the Integrity of the Criminal Process
§9.03 *False Testimony* Which May Not Be Presented to a Jury
§9.04 Duty to Provide Exculpatory Evidence—Upon Request
§9.05 —When No Request for Exculpatory Evidence or a Nonspecific Request Is Made by the Defendant
§9.06 Prosecutor's Duty to Avoid Intimidating Defense Witnesses
§9.07 Duty to Act Fairly
§9.08 Liability of Prosecutors for Violation of a Defendant's Constitutional Rights

## §9.01 Duties of the Prosecutor

While a number of states permit criminal complaints to be instituted, and even prosecuted, by private individuals, by far the greater number of criminal cases in the United States are prosecuted by government officials. All the states and the federal government have developed statutory schemes for the election or appointment of such officials. Indeed, it has been held that a private person has no standing to challenge the decision of a public prosecutor to institute or not to institute criminal charges.[1]

---

[1] Linda R v Richard D, 410 US 614, 618-19 (1973).

The prosecutor is a unique fixture in American law. While the prosecutor is an advocate, he or she is in some ways a quasi-judicial figure, who determines what charges should be brought, when they should be brought, how a particular investigation should be conducted, and what amount of resources should be allocated to the investigation. As Justice Sutherland wrote almost 50 years ago:

> The [prosecutor] is the representative not of an ordinary party to a controversy but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution, is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense a servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer. He may prosecute with earnestness and vigor —indeed, he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from using improper methods, calculated to produce a wrongful conviction, as it is to use every legitimate means to bring about a just one.[2]

Justice Sutherland's statement has become more compelling with each passing year, as prosecutors and police obtain access to highly sophisticated and complex methods of criminal investigation and more statutes creating mala prohibita crimes are enacted. Given the unlimited resources at the command of the prosecutor, and the expense in defending oneself from government charges, it is ludicrous to consider that criminal defendants and their adversaries, the prosecutors, stand on an equal footing. A prosecutor may use court-sanctioned wiretapping techniques, undercover special agents, and other extraordinary investigative methods unavailable to ordinary citizens. A prosecutor may, in some circumstances, ensure that the defendant never knows the names of government informers, and may afford criminals immunity from prosecution to persuade them to testify against a particular defendant. Finally, after determining what crime to charge, the prosecutor may, in effect, determine what sentence the defendant will receive by engaging in plea bargaining or by recommending a sentence after conviction.

Because of the extraordinary powers that American prosecutors have in most jurisdictions, courts have become ever more willing to examine the manner in which the prosecution has wielded the power of the sovereign, to ensure that the power has not been used unfairly. A substantial body of case law has begun to develop concerning the prosecutor's duties in plea bargaining.[3]

[2] Berger v United States, 295 US 78, 88 (1935); *see also* Marshall v Jerricho, 446 US 238 (1980).

[3] See §§12.06-.09.

why is not one honored after being made? then what is the sense of having option? just to trick the defendant into pleading guilty & then having him at the mercy of the court?

use of immunity,[4] discretion in bringing charges,[5] and trial tactics.[6] For the sake of clarity, these rules are discussed in the chapters dealing with those particular aspects of criminal procedure. The constitutional obligations of prosecutors which continue throughout the investigation through trial and post-trial proceedings are discussed in the sections following.

## §9.02 Duty to Protect the Integrity of the Criminal Process

Especially important

The United States Supreme Court has been explicit and clear in finding a duty on the part of prosecutors to ensure that no false evidence may persuade a trier of fact of a defendant's guilt. In 1935, the Court held that the knowing use of false evidence by a prosecutor and intentional suppression of exculpatory evidence would constitute a violation of the defendant's right to due process of law, guaranteed by the Fourteenth Amendment.[7] The Court reasoned that use of false evidence to "deprive a defendant of liberty through a deliberate deception of court and jury" was inconsistent with fundamental notions of justice.[8] The Court did not regard reversal of a conviction as a sanction to be used against the prosecutor; rather, the Court considered the subversion of the trial process the primary evil, and reversal of the conviction the remedy.

This reasoning was expanded by the Court in subsequent years, during which it held that a defendant's due process rights are violated whenever a prosecutor lets information the prosecutor knows is false stand uncorrected.[9] The prosecution need not intentionally elicit the evidence; if false evidence is produced, the prosecutor has a constitutional duty to correct it.[10]

Virtually all the reported cases concerning use of false testimony by the prosecutor arise after a conviction, on habeas corpus. It is the practice in some jurisdictions to require the prosecutor to turn his or her entire file over to the defense counsel after conviction.

One of the commonest claims of false testimony concerns promises made by the prosecution to a criminal who is testifying on behalf of the government. It is well settled that the fact that a witness testified falsely about promises made by the government may be sufficient to constitute a violation of due process,

[4] See §§13.10-13.14.

[5] See §§7.01, 7.12, 7.13.

[6] See §17.11.

[7] Mooney v Holohan, 294 US 103 (1935); *see also* Miller v Pate, 386 US 1 (1967). Indeed, a growing number have even found a constitutional duty to present exculpatory evidence to a grand jury, *see, e.g.*, United States v Gold, 470 F Supp 1336, 1353 (ND Ill 1979); §7.12.

[8] Mooney v Holohan, 294 US 103, 112 (1935); Pyle v Kansas, 317 US 213 (1942).

[9] Napue v Illinois, 360 US 264, 269 (1959); Alcorta v Texas, 355 US 28 (1957).

[10] Giles v Maryland, 386 US 66 (1967).

even though new evidence relating to the credibility of witnesses would not be grounds for a new trial in most state systems and in the federal system.[11] When a defendant shows that false evidence has been presented to a jury, the conviction must be reversed if the false evidence "could . . . in any reasonable likelihood have affected the judgment of the jury."[12]

Because the strict rules relating to false testimony are designed to protect the public and not to punish the prosecutor, it is irrelevant that the particular prosecutor who appears in court when false testimony is presented believes it to be true.[13] Because it is the right to a fair trial and not the prosecutor's state of mind which is at issue, promises of leniency to a witness made by one government agent are attributed to the prosecutor's office as a whole.[14] For similar reasons, the fact that a prosecutor or police officer had no authority to make the promises made to the witness is irrelevant in determining whether a defendant's rights were violated by the witness's testimony.[15]

If a defendant alleges, on habeas corpus, that false testimony was used to convict, a reviewing federal court will make an independent examination of the record before it, and the federal court will not be bound by a state court's findings of fact.[16] The breadth of the standard of review, and the fact that federal courts may make independent judgments about the effect of testimony at trials held years earlier, has resulted in the granting of a writ of habeas corpus in numerous cases where the defendant could make any reasonable showing that false testimony was presented at trial.[17]

## §9.03 *False Testimony* Which May Not Be Presented to a Jury

The rule which requires reversal if the government has allowed false testimony to be presented to the trier of fact depends, of necessity, on the definition of false testimony. Perhaps because of the nature of the deprivation which occurs when perjured testimony is introduced against an accused in a criminal case, courts have not been inclined to adopt a technical definition of the word *false*. Rather, courts have generally held that if testimony would be misleading to a

[11] Giglio v United States, 405 US 150 (1972); Napue v Illinois, 360 US 264 (1959); Giles v Maryland, 386 US 66 (1967).

[12] Giglio v United States, 405 US 150, 1. 4 (1972); United States v Agurs, 427 US 97, 103 (1976).

[13] Commonwealth v Halewell, 477 Pa 232, 383 A2d 909 (1978).

[14] *Id*; Giglio v United States, 405 US 150, 154 (1972).

[15] Giglio v United States, 405 US 150, 154 (1972).

[16] Napue v Illinois, 360 US 264, 271 (1959).

[17] *See, e.g.*, Imbler v Craven, 299 F Supp 795, 812 (CD Cal 1969), noted in Imbler v Pachtman, 424 US 409, 414 (1976).

jury, even though technically not perjurious, the court must analyze the case in the same fashion as it would have if the prosecutor had knowingly introduced perjured testimony.[18] Illustrative is the Fifth Circuit's opinion in *Blankenship v Estelle*.[19] In that case, the habeas corpus petitioner alleged that, at his trial, the prosecutor asked two witnesses who had participated in the robbery for which he was being tried whether they were "under indictment" for the same crime, and they responded affirmatively. One witness denied on cross-examination that he had changed his story and testified against the defendant to "get himself off the hook." The petitioner alleged that there had been a tacit understanding that if the witnesses testified against the petitioner, the charges against them would be dismissed. The court held that if those allegations were true, the petitioner's rights would have been violated. The court noted that a course of conduct such as testifying could be "voluntary" although motivated by legally coercive considerations such as testifying or facing criminal prosecution.[20]

The principles outlined in *Blankenship* should be borne in mind by any attorney considering review of a file after conviction. In some states, it is still the practice of prosecutors to tell witnesses facing criminal charges that no formal promises will be made until after the trial in which they must testify.[21] Even if the statement is truthful, if both the prosecution and the witness understand that the witness will receive a benefit by testifying, it would appear that the witness's testimony that "no promises have been made" would be considered to be false, and the rule of *Mooney v Holohan* [22] invoked.[23]

## §9.04 Duty to Provide Exculpatory Evidence—Upon Request

In *Brady v Maryland*,[24] the United States Supreme Court held that the suppression of evidence favorable to an accused after the accused's request violates due process when the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Perhaps because

---

[18] Dupart v United States, 541 F2d 1148 (5th Cir 1976); United States v Harris, 498 F2d 1164 (3d Cir), *cert denied*, 419 US 1069 (1974); *but see* Commonwealth v Gilday, 415 NE2d 797 (Mass 1980).

[19] 545 F2d 510 (5th Cir 1977).

[20] *Id* 514.

[21] *See, e.g.*, Commonwealth v Gilday, 1980 Mass Adv Sh 2551, 415 NE2d 797 (Mass 1980).

[22] 294 US 103 (1935).

[23] *Cf Franklin v State*, 97 Nev 220, 577 P2d 860 (Nev 1978) (prosecutor plea bargained with alleged accomplice of defendant by using his testimony at preliminary hearing, but would not allow him to plead guilty until after testifying; held, use of the testimony at trial violated defendant's due process rights).

[24] 373 US 83 (1963).

failure to provide exculpatory evidence on request is not as egregious as the use of false evidence, the Court has fashioned a separate standard to determine when a conviction must be reversed because of the prosecution's failure to provide exculpatory evidence. While a defendant seeking reversal of a conviction on the grounds that the prosecution knowingly used false testimony need only show the existence of any reasonable likelihood that the false testimony could have affected the judgment of the jury, the defendant alleging that the prosecution did not provide exculpatory evidence on request must show that the evidence was "material" to either guilt or punishment.[25] If the defendant makes no request for exculpatory evidence, or only a generalized request, a new trial will not be ordered unless the evidence creates a reasonable doubt which did not exist before.[26]

Because of the great difference between the showing a person must make to obtain a new trial when the allegation concerns denial of access to exculpatory evidence after a specific request, and when the allegation concerns denial of exculpatory evidence after a nonspecific request, a substantial number of courts have wrestled with the issue of what constitutes a *specific* production request. Federal courts have been willing to consider even requests which appear general on their face in the context of the litigation, to determine whether the request was specific or nonspecific and whether the defendant is entitled to have the court review the evidence at trial pursuant to the stricter standard of review.[27] The Eighth Circuit has pointed out that specificity cannot be determined in a vacuum, and that to determine whether a request is specific, the court must decide whether the prosecutor had reasonable notice of what it was that the defendant was seeking.[28] Thus, the literal language of the defense request, the reasonableness of the explanation of the failure to provide the evidence, and the statements of counsel at motion hearings may all be relevant.[29] In *Scurr v Niccum*,[30] the Eighth Circuit held, for example, that a request for "all statements exculpatory in nature" was, considering the context of the case, a specific request for evidence regarding other suspects, since in the course of one of the motion hearings, defense counsel had stated that he assumed exculpatory evidence would include evidence that "someone else did it."

In a major criminal investigation, police officers often develop leads in more than one direction before they become convinced of the guilt of one particular individual and concentrate their efforts on proof of that individual's guilt. Such

---

[25] United States v Agurs, 427 US 97, 104 (1976).

[26] *Id.*

[27] *See, e.g.*, Scurr v Niccum, 620 F2d 186 (8th Cir 1980); United States v McCrane, 547 F2d 204 (3d Cir 1976).

[28] Scurr v Niccum, 620 F2d 186 (8th Cir 1980); see §9.05.

[29] Scurr v Niccum, 620 F2d 186 (8th Cir 1980).

[30] 620 F2d 186 (8th Cir 1980).

parts of an investigative file become less important as the investigation progresses and may even be culled from the working file. In any case, it behooves a defendant's attorney to make a specific request for all evidence which suggests that any individual other than the defendant committed the crime charged so that even if the evidence is not produced, if a conviction results, the defendant may bear a far lighter burden in seeking a new trial.

## §9.05 —When No Request for Exculpatory Evidence or a Nonspecific Request Is Made by the Defendant

In *United States v Agurs*,[31] the United States Supreme Court held that when the prosecutor has, in good faith, failed to provide a defendant with exculpatory evidence, but no specific request was made for the evidence, a heavy burden rests on the defendant who seeks a new trial. Distinguishing the cases in which the prosecutor knowingly uses false evidence (in which case the defendant need only show that the false evidence could, in any reasonable likelihood, have affected the judgment of the jury[32]) and the cases in which the prosecution does not provide exculpatory evidence after it has been specifically requested to do so (in which case the defendant must show that the evidence suppressed was *material* to the finding of guilt or innocence or the degree of punishment to be inflicted[33]), the Court held that when a defendant has made no request for exculpatory evidence, or a nonspecific request, and the government has not provided the defendant with exculpatory evidence, a new trial need not be granted unless "the omitted evidence creates a reasonable doubt that did not otherwise exist."[34]

The issues created by *Agurs*, in the words of Justice Kaplan of the Massachusetts Supreme Judicial Court, "have become a lively problem for the federal courts."[35] In addition to litigation over whether a particular request is specific or general,[36] there has been some conflict over whether the evidence must create a reasonable doubt in the mind of the reviewing court,[37] or whether the evidence must create a reasonable doubt in the mind of a rational juror.[38]

---

[31] 427 US 97 (1976).

[32] Mooney v Holohan, 294 US 103 (1935).

[33] Brady v Maryland, 373 US 83 (1963).

[34] United States v Agurs, 427 US 97, 112 (1976).

[35] Commonwealth v Ellison, 376 Mass 1, 15, 379 NE2d 560, 572 (1978).

[36] See §9.04.

[37] *See, e.g.*, United States v Gordon, 570 F2d 397, 402 (1st Cir 1978) (*doubt in mind of court* standard applied).

[38] Cannon v Alabama, 558 F2d 1211, 1214 n 11 (5th Cir 1977), *cert denied*, 434 US 841 (1978) (*doubt in mind of trial factfinder* standard applied).

Whether the evidence creates a reasonable doubt depends, of course, both on the quality of the evidence and on the standard used. As a broad rule, evidence which merely impeaches a government witness is usually somewhat less likely to persuade a court that a reasonable doubt would have been created in the trier of fact's mind.[39] A divided Fifth Circuit has extended the *Agurs* rule to hold that, with respect to impeaching evidence, the defendant seeking a new trial must demonstrate that the new evidence probably would have resulted in acquittal.[40]

## §9.06 Duty to Avoid Intimidating Defense Witnesses

A criminal defendant has a Sixth Amendment right to present evidence in his or her favor. Obviously, a person who testifies on behalf of one whom the government seeks to convict of crime will do the government no good turn. A lay witness may be apprehensive about the government's response to his or her testimony. If the witness is actually from the criminal milieu, those fears may be more real than imagined.

For this reason, courts have generally held that any oppression of a defense witness by the prosecution is a violation of the defendant's constitutional rights.[41] Most of the reported cases rely on *Webb v Texas*,[42] in which a state trial judge singled out a defense witness and warned him that if he testified falsely he would be prosecuted for perjury, and the witness thereafter declined to testify. The United States Supreme Court held that the defendant's right to due process of law had been violated because the "unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify."[43] The threats may also be subtle. For example, an FBI agent's statement to a defense witness that "he knew about the problem in Colorado" where a defense witness was under indictment in Colorado was held to constitute a violation of due process when the witness thereafter declined to testify.[44] A prosecutor may not threaten a potential defense witness by calling her to the office and "advising her of her rights" in the present of police officers.[45] Moreover, the

---

[39] *See, e.g.*, United States v Imbruglia, 617 F2d 1, 6-7 (1st Cir 1980); United States v Shelton, 588 F2d 1242, 1248 (7th Cir 1978)

[40] Garrison v Maggio, 540 F2d 1271 (5th Cir 1976), *cert denied*, 431 US 940 (1977).

[41] *See, e.g.*, United States v Hendrickson, 564 F2d 197 (5th Cir 1977); United States v Thomas, 488 F2d 334 (6th Cir 1973).

[42] 409 US 95 (1972).

[43] *Id* 98.

[44] United States v Hammond, 598 F2d 1008 (5th Cir 1979).

[45] United States v Morrison, 535 F2d 223, 227 (3d Cir 1976).

good faith or bad faith of the prosecutor or police officer is irrelevant, since the issue is not whether the police officer or prosecutor obstructed justice, but whether the defendant had a fair trial.[46]

If threats, subtle or direct, have been made against a witness, courts will not require a defendant to make a substantial showing of prejudicial effect. Even if the defendant subpoenas the threatened witness, and the witness testifies, a constitutional violation may be said to have occurred because "there is an obvious and considerable difference between the free and open testimony anticipated of a voluntary witness and the perhaps guarded testimony of a reluctant witness who is only willing to appear at the command of the court."[47]

Because of the catastrophic effect this type of government action has on a defendant, most courts have held that such action by the government can never be harmless error.[48]

## §9.07 Duty of Prosecutor to Act Fairly

Ethical standards applicable to all attorneys are, of course, applicable to prosecuting attorneys. If a prosecutor's conduct is unfair and prejudices the defendant, a conviction obtained may be reversed as a matter of state or federal law. Some actions of a prosecutor, however, may be so unfair as to amount to a violation of the defendant's constitutional right to due process of law. The United States Supreme Court has explicitly recognized the distinction between ordinary trial error and misconduct which is so egregious as to constitute a denial of due process of law.[49] State and federal courts have, on numerous occasions, considered improprieties committed by prosecutors, such as "summoning" defense witnesses to the prosecutor's office for an interview,[50] instructing witnesses not to speak with defense lawyers,[51] or failing to comply with discovery orders of the court.[52] Courts have generally refused to punish a prosecutor for misdeeds by dismissing a prosecution as a sanction, because to do so would punish the public and subvert the end of a trial, the search

---

[46] *Id.*

[47] United States v Thomas, 488 F2d 334, 336 (6th Cir 1973); *see also* United States v Morrison, 535 F2d 223, 227 (3d Cir 1976).

[48] United States v Hammond, 598 F2d 1008 (5th Cir 1979); United States v Morrison, 535 F2d 223 (3d Cir 1976); United States v Thomas, 488 F2d 344 (6th Cir 1973) (such action by the prosecutor may require the government to grant immunity to the defense witness). See §13.14.

[49] Donnelly v DeChristoforo, 416 US 637 (1974).

[50] United States v Thomas, 320 F Supp 527 (DDC 1970); Durbin v United States, 221 F2d 520 (DC Cir 1954).

[51] Gregory v United States, 369 F2d 185, 188 (DC Cir 1968), *cert denied*, 396 US 865 (1969).

[52] People v Reyes, 12 Cal 3d 486, 526 P2d 225, 116 Cal Rptr 217 (1974).

for truth. A number of courts have suggested that, as a matter of state law, sanctions should be imposed on a prosecutor who violates state law.[53] But there are constitutional considerations which must be addressed in any case in which prosecutorial misconduct has occurred. First, the United States Supreme Court has suggested that if prosecution or police conduct is so shocking as to outrage the court, due process may bar the state from proceeding.[54] More fundamentally, the action of the prosecutor may affect the fairness of the trial itself, or a particular right of the defendant.[55] It has been held, for example, that when a prosecutor refuses to provide the address of a witness, as ordered by the court, so that the defendant may investigate his background and assess his veracity as a witness, the court may exclude the witness's testimony because to allow it would violate the defendant's Sixth Amendment right to confront the witnesses against him.[56] Similarly, it has been held that where the prosecution failed to comply with discovery orders on several occasions, and succeeded in having the matter continued to give it time to comply but did not comply even then, dismissal for violation of the defendant's speedy trial right was proper.[57] The lodestone is prejudice; the defendant who can show that improper action of the police or prosecutor has affected any of his or her rights may be able to obtain relief from the courts; otherwise, the remedy will be sanctions against the prosecutor, or the prosecutor's office, as an attorney.[58]

## §9.08 Liability of Prosecutors for Violation of a Defendant's Constitutional Rights

A person whose constitutional rights have been infringed by the actions of a prosecutor may bring a civil action to recover damages for violation of his or her civil rights pursuant to 42 USC §1983.[59] If police officers have violated the civil rights of an individual, an action may be brought against them as well.

---

[53] *See, e.g.*, State v Smothers, 605 SW2d 128 (Mo 1980); State v Arthur, 118 NH 561, 391 A2d 884 (1978).

[54] Hampton v United States, 425 US 484, 495 n 7 (1976) (Powell, J, concurring); United States v Kelly, 31 Crim L Rep (BNA) 2149 (DDC May 31, 1982).

[55] Griffin v California, 380 US 609 (1965) (comment on failure of defendant to testify).

[56] State v Burgoon, 4 Kan App 485, 609 P2d 194 (1980).

[57] Commonwealth v Silvia, 413 NE2d 349 (Mass App Ct 1980).

[58] *See, e.g.*, State v High Elk, 298 NW2d 87, 90 (SD 1980) (prosecution comment to news media regarding defendant's prior record of felony conviction improper, but no violation of defendant's rights where jury did not hear the evidence).

[59] See generally, S. Nahmod, Civil Rights and Civil Liberties §§1.01-1.21 (Shepard's/McGraw-Hill 1979).

The United States Supreme Court has explicitly held that liability pursuant to 42 USC §1983 must be considered against a broad background of tort principles.[60] Thus, the Court has extended the common law immunity from tort liability to §1983 actions. The reason for immunity is not that the law presumes that prosecutors will always act in good faith, but rather that the societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large has long been recognized as an acceptable justification for official immunity.[61]

Thus, a prosecutor enjoys the same immunity from §1983 actions that prosecutors enjoyed from tort actions at common law.[62] A prosecutor is immune from civil liability for actions taken in the traditional role as a prosecutor, such as initiating a prosecution and presenting the state's case.[63] While the Supreme Court has expressly left the issue open, lower courts have generally held that when a prosecutor who acts outside the traditional role of a prosecutor and performs investigative functions he shares the good faith immunity afforded police officers.[64]

However, prosecutorial misconduct does not per se void a criminal conviction, no matter how egregious the misconduct; such misconduct may be harmless error.[65] The aim of due process is not punishment of society for the misdeeds of the prosecutor, but avoidance of an unfair trial to the accused.[66]

---

[60] Tenney v Brandhove, 341 US 367 (1951).

[61] Ferri v Ackerman, 444 US 193 (1979).

[62] Imbler v Pachtman, 424 US 409, 427 (1976).

[63] *Id* 431.

[64] Guerro v Mulhearn, 498 F2d 1249, 1256 (1st Cir 1974); see generally, S. Nahmod, Civil Rights and Civil Liberties §§7.10-7.11 (Shepard's/McGraw-Hill 1979).

[65] Smith v Phillips, 102 S Ct 940 (1982).

[66] *Id.*

were a number of other people he knew that had information that Mr. Stroup was selling to.

One of the things that the Court needs to consider in considering a minor role participant is the knowledge that the defendant had of the overall conspiracy, and I think it is fair to say, Your Honor, that since Mr. Stroup knew exactly where to to go and when, and both Miss Gausvik and Mr. Anderson testified when a shipment of methamphetamine would come in from Mr. Lobato, Mr. Stroup would be there. And Mr. Maddelein testified that when methamphetamine came in, Harry would know that there was quantity at the home to be purchased.

So I think a minor role is not appropriate in this case, Your Honor.

And one last thing, Your Honor. I think that based on the letter that the Court received in evidence as Government's Exhibit 1, and the testimony of Agent Mulholland regarding Craig Sadler's statements regarding that letter -- and I would remind the Court that that letter from Mr. Stroup to Mr. Sadler states, "Remember this" -- obviously I'm paraphrasing this, Your Honor. It states, "Remember, I wired you that money because I was getting you truck parts." And then later it went on to say, "Don't say anything to law enforcement or anybody else about this letter because they take a dim view of witness tampering in the courts."

And then in addition to that, Mr. Sadler's

 statements -- and I think this is the most revealing of all of it, Your Honor. Mr. Sadler said straightforward the only money he ever received by wire from Mr. Stroup was money for methamphetamine.

again - his on his fathers statement.

And because of that, I believe, Your Honor, under Section 3C1.1 the defendant does deserve a two-level increase for obstructing or impeding the administration of justice. And it could be under -- when the Court has an opportunity to look at the Commentary, Application Note Number 4 discusses different examples -- and these are by no means exclusive, but different examples of obstruction or impeding administration of justice and what that means, and both (a) and (d) may be applicable here, Your Honor.

(a) states threatening, intimidating or otherwise unlawfully influencing a codefendant, witness or juror directly or indirectly or attempting to do so. Now, there was certainly no threats or intimidation by Mr. Stroup's letter to Mr. Sadler, but it was certainly influence. He was stating in no uncertain terms exactly what he hoped Mr. Stroup (sic) would testify about.

The second subsection -- and this may be the most applicable -- destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding or attempting to do so. That's under Section 3C1.1(d).

I should note for the record, and this is important, this information came to light to the Government after the plea agreement so there was no reference to it in the plea agreement, but Mr. Barrett was made aware of it when it came to light.

So 3C1.1 (a) or (d), Your Honor, actually applies in the situation, and actually probably more so (d), the directing or procuring another person to conceal evidence that is material to an official investigation. And if directing somebody to, a, state that money that was received by the defendant for methamphetamine purchases, directing them to falsely testify that it came for motor parts, and then advising the defendant to shred or destroy the letter that he received, if that doesn't fall under Section 3C1.1, Your Honor, I don't know what does.

So for those reasons, Your Honor, the Government stands by the plea agreement that Mr. Barrett and the Government entered into. The Government objects to any minor role participant reduction and believes that the Court should increase the level by two for obstruction or impeding justice. Thank you.

THE COURT: Thank you, Mr. Healy.

You haven't -- while that was really a rebuttal to which no rebuttal would be ordinarily due, I think, Mr. Barrett, that the issue of the effect of the Stroup letter

is something that you haven't really had a chance to speak to, and I will be glad to hear you.

MR. SEAN BARRETT: That's correct, Your Honor. And what I would say as to that letter, Judge, is obviously in advising my client regarding his case I tell him what everybody is saying about him. And when it came to some people, particularly Cory Anderson, my client became very upset that what he believed wasn't the case was being said against him.

And Mr. Stroup's concern, Judge, and I think which is encompassed in this letter, was asking Mr. Sadler, in effect, "Don't exaggerate against me. Tell the truth." Why would he put in there, well, destroy this letter? Because, well, Harry Stroup doesn't receive any favors ever. Harry Stroup doesn't get many breaks, quite frankly. And, you know, I think Harry Stroup would think that if anybody saw a letter from him to anyone else asking them to tell the truth and remind the Court that the truth was car parts, that would be taken in the wrong context, which obviously has occurred, Judge.

And so in that regard, Judge, I would note if Mr. Sadler was going to be called as a witness or what the deal was with him -- it doesn't sound like there was any specifics as to that particular transaction which he mentioned other than if Harry was giving him money it was for drugs. That's the context in which Mr. Stroup wrote that letter. He didn't want anybody else going off the reservation on him, so to speak.

Attached pages — page #2

For Ground Two - supporting facts

Instead of what was presented to the jury to decide without any contradicting facts, I believe this would have created sufficient doubt as to the witnesses credibility and story.

Also, I have been denied access to my transcripts of proceedings and any other materials that pertain to this case because my court appointed attorney, (Mr. Scott Powers), has never answered a phone call to him, nor any of several letters to him requesting these items, therefore hindering me from adequate research and ability to point out mistakes.

I will include copies of letters I sent to Mr. Powers requesting my Transcripts and any and all other materials in his possession pertaining to my case.

[illegible] that [illegible] 15 [illegible] accept the [illegible] especially [illegible] our [illegible] [illegible]

[illegible] you to furnish me, transcripts of all the proceedings and everything involved with this case. Also, I am wondering whether you ever contacted Craig Sadler and asked him specifically whether he was given time off his sentence for his assistance in prosecuting me in this case? Another point I believe is very important to establish is that he was never supoenaed as a witness, nor was he ever even told he would be, nor even on a list anywhere for consideration as one. Therefore making the manipulation of the wording by the Prosecuting Attorney to create a guise where there actually was never one even intended is certainly a form of prejudicially influenced malicious prosecution.

Please let me know what you think about those things and please furnish me with a rough draft of your Appeals Brief ahead of time for me to read, and consider and discuss with you way before it is due so that we will be in agreement before its filed, ok?

My curiosity prompts me to ask also whether or not you found out anything on the matter in Sheridan you were assisting on. As I haven't heard from you since your letter of Jan. 2nd I'm anxiously awaiting your reply and materials requested. Thank you for your time + consideration of these matters.

Sincerely,
Harry Strong

[illegible] copies + sent
on [illegible] 02-01-08
[illegible]

March 1, 2008

(1)

Dear Scott,

I received the Appeals Brief you sent me on Feb. 25th. I am seriously disappointed to say the least! I'm sure you must have received my letter of Feb. 1st and were therefore quite aware of my requests for not only the transcripts of all the proceedings, but also a rough draft of the Appeals Brief to read and consider and discuss with you before it was filed. I also know that we discussed these matters several times while I was incarcerated in Wheatland during your visits and over the phone as well as in letters. Why is it that you have chosen to ignore my requests, especially for the transcripts of all of the proceedings? I have run across things in reading over this Appeals Brief that are stated as being said in the Courtroom, yet I don't remember them that way. For an instance on page #8, at the end of 2nd paragraph, The statements Sedler supposedly made as referenced to (R4:85). I don't think he said he talked drugs over the telephone. My recollection is that he stated that he did not discuss drugs over the teleph and even stated he used other terms to avoid discussing drugs even, like white

(2)

parts even. Also, I asked in my last letter whether or not you had contacted Sadler to find out whether he was actually given a reduced sentence since testifying against me. I believe the element of collaboration between his attorney and the Prosecuting Attorney evidenced by his attorney turning that letter over to the Prosecutor in the first place should have been addressed also. The fact that he was never called nor was ever going to be called as a witness in my first trial was also an essential element we discussed being addressed which you didn't do in the Appeals Brief either, why not?

Well, I have waited another week or so for you to honor my requests in my letter of Feb. 1st, which you haven't done, so I am writing to again remind you that I definitely want you to send me a copy of all the transcripts of all proceedings and a copy of any and everything else that pertains to my case. I also went and read the Rule 29 you are appealing under. I'm not quite sure I understand the rationale behind your motion and Appeal (so please explain that to me). I did go back and reread the Appeals Brief several times and I agree that what you have presented as argument is pretty good. I just feel like you should have addressed more so the issues I mentioned above that we had discussed. I also feel that a mention of the Prosecutorial Misconduct wouldn't hurt because of his foreknowledge that there was not going to

Sept. 26, 2008

Dear Scott,

I have received your letter of Aug. 18, 2008, informing me of the Appeals Courts decision and of your subsequent request in a motion to withdraw. I have also received an "order" from the Court of Appeals granting your motion dated Aug. 25 2008.

Now that I am on my own to proceed pro se, I again request you to send me copies of the transcripts of all proceedings and anything else you might have in your files on my case, as I'm sure that I will need them. Please do not disregard and or ignore this request as you have done my previous two or three letters requesting these very same things.

Thank you for your efforts while representing me. Although I still have alot of questions I'd like answered. Maybe you remember that you were going to furnish me with materials that explained these terms that I requested definitions for, or if not I am including them in this letter.

The terms I would really like

(2)

to have explained are "de novo", "res judicata", and "collateral estoppel" all of them were used in the Appeals Courts Decision. If you cannot or will not send a definition to these terms, please send me instructions on where I might look them up and find a definition for myself.

Thank you for your time and consideration of these matters. I am anxiously awaiting these materials I have requested from you so that I can get to work on proceeding toward a remedy of the situation. Oh yes, how much time do I have to notify the court that I will be or to actually file the "writ of certiorari" that you mentioned? Is there a deadline? And, since you have been granted your motion to withdraw, is there a way to request and be granted counsel for further proceedings, such as Appellate Counsel?

Again, I am anxiously awaiting a response from you.

Sincerely,

Harry A. Stroup

Dated: 9-26-08

Witnessed By: [signature] CHAPCN PECK

even be a trial when he gained the information (my letter) that he used to misstate intentions to get any indictment, just because of prejudicial influence from being ignored by the Judge during my first sentencing for the Conspiracy charge, when he tried to get an enhancement for Obstructing Justice. I believe it probably would have helped my case alot if his prejudicial comments and charging would have been pointed out by someone as familiar with them as you are by having been a student at the same time and serving your time being a State Public Defender at the same time and in the same county as he was while he was a state assistant prosecuting attorney, namely Sheridan County, Wyoming, which I also happen ~~happen~~ to be from.

In your opinion should I go ahead and file this papers you sent me claiming Judicial Misconduct? The judge was definitely not properly informed of the facts at sentencing and was way off base, as I recall, that's part of the reason I need those transcripts of the proceedings. Please answer this letter and my former one of Feb. 1st and Please send me these requested materials.

Also again I am interested to know whether you have done anything at all about the matter in Sheridan. Please inform me. Thank you for your time and consideration of these matters.

Sincerely,
[illegible] Stowe

Copied + sent on March 27th 2008
Witnessed by: [illegible]
Dated: 3/27/08

AO 243
REV 6/82

D Ground four:

Supporting FACTS (tell your story *briefly* without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: Actually neither one of these was presented because I was informed now was the time to address these issues.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☑ No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing Mr. Scott Powers
315A West Lincolnway; Suites 1+2 - P.O. Box 21001
Cheyenne, Wyoming / 82003

(b) At arraignment and plea
Same as (a)

(c) At trial Same as (a)

(d) At sentencing Same as (a)

AO 243
REV 6/82

(e) On appeal Same as (a)

(f) In any post-conviction proceeding N.A.

(g) On appeal from any adverse ruling in a post-conviction proceeding N.A.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☑ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☑

(a) If so, give name and location of court which imposed sentence to be served in the future:
N.A.

(b) Give date and length of the above sentence: N.A.

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐ N.A.

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

October , 2009
(date)

Harry A. Stroup
Signature of Movant

Since our mail service doesn't always function on the same day as our material is deposited, I have signed and dated this form as requested and the paid for certified and registered delivery for a record.

Attached pages -

I would like this also to be considered as a formal motion for leave to file any Supplementary information I may need to file later.

Also I would like this to be considered as a formal motion for an extension of time to file my "2255 Motions" because it is impossible to adequately prepare my case without access to my Transcripts of trial and any other proceedings dealing with this case, which I have never received from my court appointed attorney, even though I have requested all those items from him numerous times.

Also I would like this to be considered as a formal motion to either compel my former attorney, (Mr. Scott Powers), to furnish me with all these documents and transcripts pertaining to this case, including transcripts of the Grand Jury proceedings, all elements of Discovery and any and all motions made to the court, ~~or~~ to have the court furnish all these items to me.



Attached pages — page #4

Timeliness of Motion: why one-year statute of limitations as contained in 28 U.S.C. §2255 does not bar my motion:

Because as stated in the Federal Sentencing Guidelines Handbook on page 77, under the §30 Habeas Corpus and Collateral Attack on Sentence-section; it states — "The Ninth Circuit has held that the statute actually provides an additional 90 days (for a total of one year plus 90 days), because convictions do not "become final" until the expiration of the 90-day period for seeking certiorari in the Supreme Court, "whether or not the petitioner actually files such a petition." Also, I have filed a written motion in this court asking for an extension of time for filing of my "2255 Motions" because of losing access to my legal paperwork during a transfer from one institution to another with a subsequent layover in the transfer center in Oklahoma City for over 6 weeks. That motion and another requesting my transcripts and other important proceedings is on the court docket, but has not been heard as of yet.

The cite backing up the Ninth Circuit's decision is — Bowen v. Roe, 188 F.3d 1157, (9th Cir. 1999)

Attached pages - page #5

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellman, 935 F.2d at 1110 (10th Cir. 1991), (citing Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. CT. 594, 30 L. Ed. 2d 652 (1972). "We believe that this rule means that if the court can reasonably read the pleading to state a valid claim on which plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Id. at 1110.